# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| REBECCA RYSEWYK, MARY E. ROOD, BRIAN VAN VOOREN, and KATIE SMITH, <br><br>  Plaintiffs, <br><br> v. <br><br> SEARS HOLDINGS CORP., KCD IP, LLC, and SEARS, ROEBUCK AND CO., <br><br> Defendants. | No. 15 CV 4519 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are individuals who purchased Craftsman riding lawnmowers from Sears. After periods of normal use, all of the machines in question eventually manifested problems. Two plaintiffs' lawnmowers spontaneously caught fire, while two others' had clamps come loose. All these issues, plaintiffs claim, derive from a common design or manufacturing defect contained in certain models of Craftsman riding lawnmowers, for which defendants Sears, Roebuck and Company, Sears Holdings Corporation, and KCD IP, LLC, are allegedly to blame.

Plaintiffs bring this putative nationwide class action against defendants, seeking redress for the damage caused by this defect. The six-count complaint alleges claims for breach of warranty, negligence, strict products liability, unjust enrichment, and declaratory and injunctive relief. Defendants have moved under

Rule 12(b)(6) to dismiss the complaint in its entirety for failure to state a claim. They have also moved under Rule 23 to strike plaintiffs' class allegations.

For the following reasons, the motion to strike is denied and the motion to dismiss is granted in part and denied in part.

## I. Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [the court] accept[s] the well-pleaded facts in the complaint as true . . . ." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The plausibility test does not permit a court to disregard factual allegations simply because they seem unlikely. *Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D) provides that, "[i]n conducting an action under this rule, the court may issue orders

that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). A motion to strike class allegations under Rule 23 is an appropriate device to determine whether the case will proceed as a class action. *E.g.*, *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 870 (N.D. Ill. 2006); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014).

## II.   Background

Plaintiffs Rebecca Rysewyk, Mary Rood, Brian Van Vooren, and Katie Smith allege they each purchased a Craftsman riding lawnmower from "Sears"—a name plaintiffs use to refer collectively to defendants Sears, Roebuck and Company, Sears Holdings Corporation, and KCD IP, LLC. Unbeknownst to plaintiffs, the mowers they purchased contained a material, serious, and dangerous defect. Specifically, plaintiffs claim that certain models of Craftsman lawnmowers and lawn tractors:

> [H]ave a fuel line that is inadequately secured and has a propensity to dislodge from the gas tank during the proper intended use of the lawnmowers. Both the fuel line and electrical components are located near the lawnmowers' drive belts and pulleys such that, when either the fuel line dislodges or becomes worn through friction with the belts or pulleys, or the electrical components become worn from friction from the nearby pulleys, the lawnmowers' fuel drips onto the mowing bed and catches on fire . . . .

[1] ¶ 2. Plaintiffs claim this defect existed at the point of sale and that, at all relevant times, Sears "knew or should have known of the Defect but nevertheless sold the Lawnmowers to consumers, failed to warn consumers of the serious safety

3

risk that the Defect posed, and failed to recall these dangerously defective Lawnmowers despite the risks to life and property that they pose." *Id*. ¶ 5.

*Plaintiff Rysewyk*

On May 9, 2014, Rysewyk, a resident and citizen of Tennessee, bought a new Craftsman riding lawnmower (Model No. 917.20383) from a Sears store in Knoxville, Tennessee. After learning of problems associated with the model, Rysewyk contacted Sears, who in turn told her that the lawnmower was not being recalled. By "mid-2014," "it was apparent that the squeeze metal clamps on the rubber fuel lines could be turned, which was an indication that they d[id] not have good gripping force." *Id*. ¶ 9. Plaintiffs allege that "[o]ver time, the ability of the fuel lines to loosen and rub against moving parts is likely to result in fuel leaking onto the mowing bed, presenting a fire hazard." *Id*.

*Plaintiff Rood*

Rood, who is also a resident and citizen of Tennessee, purchased a Craftsman riding lawnmower (Model No. 917.288515) in 2011 from a Sears store in Knoxville. "By mid-2014, it was apparent [to Rood] that there were vibration abrasions on the rubber fuel lines, and that the metal spring clamps [could] move freely on the lines. There was also fuel leakage on the connection between the mid-line fuel filter and the fuel line. Further failure of the line could result in contact with the hot muffler and potentially cause a fire." *Id*. ¶ 10.

*Plaintiff Van Vooren*

Van Vooren, a resident and citizen of New York, purchased a Craftsman riding lawnmower (Model No. 917.27660) in 2009 from a Sears store in Pine Island, New York. Six years later, Van Vooren parked the mower outside his detached garage after having mowed his property. The machine caught fire shortly after he walked away, resulting in the garage burning to the ground, the side of his house melting, and the back of his truck being burned. Van Vooren lost tools, car parts, and other equipment. He called Sears to complain of the defect, to inform them of the fire, and to request compensation. He also submitted an online form to the same effect. Sears never offered him any remedy. *Id.* ¶ 12.

*Plaintiff Smith*

Smith, a citizen and resident of Kentucky, bought a Craftsman lawnmower (Model No. 917.289453) in March 2011 from a Sears store in Paducah, Kentucky. On April 25, 2015, Smith's husband was mowing the lawn when the machine caught fire. Smith later called Sears to complain. Noting the lawnmower was no longer under warranty, Sears refused to compensate Smith. *Id.* ¶ 15.

*Class Action Complaint*

Plaintiffs filed a six-count class action complaint in this court on May 21, 2015, asserting jurisdiction under the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)). The complaint contains claims against each of the three defendants for breach of express warranty (Count I), breach of the implied warranty of merchantability (Count II), negligence (Count III), unjust enrichment (Count IV),

"strict liability – manufacturing and design defect and failure to warn" (Count V), and injunctive and declaratory relief (Count VI).

Two motions are currently pending. First, defendants moved under Rule 12(b)(6) to dismiss the complaint in its entirety as to each defendant for failure to state a claim. Plaintiffs responded by voluntarily dismissing Count I as to Van Vooren; Count II as to Van Vooren and Smith; and Counts III and V as to Rysewyk, Rood, and Smith.

Second, defendants moved under Rule 23 to strike the class allegations from plaintiffs' complaint.

## III. Analysis

### A. Breach of Express Warranty (Count I) – Rysewyk, Rood, and Smith

Defendants argue Count I should be dismissed as to Rysewyk because she did not allegedly experience any problems with her tractor that would be covered by the express warranty. I disagree. The complaint alleges that Sears "expressly warranted that the Lawnmowers were free from defects, were made for years of dependable operation, and consisted of merchantable material and workmanship." [1] ¶ 22. Concerning Rysewyk, the complaint says that "by mid-2014, it was apparent that the squeeze metal clamps on the rubber fuel lines could be turned, which was an indication that they do not have a good gripping force," and "is likely to result in fuel leaking onto the mowing bed, presenting a fire hazard." *Id*. ¶ 9. Defendants say these allegations are insufficient because "there is no allegation that the fuel lines in fact *have* loosened or rubbed against each other, let alone that

6

they caused a fire . . . ." [47] at 2 (emphasis in original). Fair enough, but the express warranty—which says the mowers are "free from defects"—is broad enough to encompass problems much less severe than catching fire. A defect may include a risk of product failure, and at this early stage, with all reasonable inferences being drawn in plaintiffs' favor, it cannot be said that being able to turn "squeeze metal clamps" is not a "defect" as a matter of law.

Next, defendants say Rood and Smith fail to state claims for breach of express warranty because the defects they allege occurred outside the two-year warranty period. Both plaintiffs acknowledge this timing, but argue that the warranty's time limit should be ignored as unconscionable under Tennessee and Kentucky law. The commercial codes of both states provide that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Tenn. Code. Ann. § 47-2-302(1); Ky. Rev. Stat. Ann. § 355.2-302(1). Rood and Smith note the further provision that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Tenn. Code. Ann. § 47-2-302(2); Ky. Rev. Stat. Ann. § 355.2-302(2). In light of this latter section, a number of courts have denied deciding

7

unconscionability on the pleadings where plaintiffs have simply claimed unconscionability. *See, e.g.*, *Disher v. Tamko Building Products, Inc.*, 2015 WL 4609980, *3–4 (S.D. Ill. July 31, 2015); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F.Supp.2d 1069, 1114 (S.D. Ind. 2001). The language of § 302(2) is both straightforward and mandatory ("the parties *shall* be afforded a reasonable opportunity to present evidence"), and § 302(2) is the kind of procedural rule that should be applied by a federal court in a case governed by state law. *See Gracek v. American Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010). Therefore, I conclude that the question of unconscionability may not be resolved at this time.

Defendants next argue that Rysewyk's and Rood's express warranty claims fail because these plaintiffs did not allege that they notified Sears of the alleged breach or that they gave Sears an opportunity to repair or replace the lawnmowers. Under Tennessee law, a buyer claiming breach of warranty "must within a reasonable time after he discovers . . . any breach[,] notify the seller of [the] breach or be barred from any remedy . . . ." Tenn. Code Ann. § 47-2-607(3)(a).

Plaintiffs respond that Rysewyk gave sufficient notice when "[a]fter learning of the problems associated with the Lawnmowers, Ms. Rysewyk contacted Sears to inquire about the defective Lawnmower." *See* [45] at 15 (citing [1] ¶ 9). Sears allegedly responded to Rysewyk by telling her there was no recall in place for her model lawnmower. *Id.* These allegations suffice to state notification under Tennessee law. The commentary to § 2-607(3) says that the "content of the notification need merely be sufficient to let the seller know that the transaction is

8

still troublesome and must be watched." These allegations' usage of the distinct terms "Lawnmowers" and "defective Lawnmower" reasonably support the inference that Rysewyk let Sears know that its transaction with her was still troublesome. That is enough for now.

As for Rood, plaintiffs contend she gave notice of the breach by filing this lawsuit. Tennessee courts have not thoroughly addressed whether a buyer can satisfy the notice requirement of § 2-607(3)(a) by filing suit, or whether pre-suit notice is required. One case suggests pre-suit notification is required. *See Harry J. Whelchel Copmany, Inc. v. Ripley Tractor Company, Inc.*, 900 S.W.2d 691, 694 (Tenn. Ct. App. 1995) (counterclaiming that equipment did not conform to the contract was too late). But this holding is somewhat ambiguous, since it can also be read to mean that, when that lawsuit was filed, it was no longer "within a reasonable time" of the breach.

Nevertheless, pre-suit notification is the majority rule in this country, primarily because it best aligns with the notice requirement's purposes: (1) to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer; (2) to afford sellers an opportunity to arm themselves for negotiation and litigation; and (3) to give the defendants the same kind of closure that they get from the statute of limitations. *See* 1 James J. White, *et al.*, *White, Summers, & Hillman, Uniform Commercial Code* § 12:19 (6th ed. 2015).

Plaintiff cites *Smith v. Pfizer Inc.*, 688 F.Supp.2d 735, 750 (M.D. Tenn. 2010) for the proposition that pre-suit notice is unnecessary under Tennessee law. That case is inapposite, however, because as it makes plain, it turned on the fact that the underlying claim was for a personal injury—a situation that does not fit the policy concerns described above. *See id.* at 751 ("'The purpose of enabling the seller to cure the defect has significance in a commercial setting but has no significance in a personal injury case . . .'").

I agree that the policies behind § 2-607(3)(a), as well as the limited Tennessee caselaw on the subject, support the conclusion that pre-suit notification is required under Tennessee law. Rood's claim for breach of express warranty is therefore dismissed. The claim remains, however, for Rysewyk and Smith.*

**B.     Breach of Implied Warranty (Count II) – Rysewyk and Rood**

Defendants contend Count II should be dismissed as to Rysewyk and Rood because a claim for breach of an implied warranty of merchantability similarly

---

* I disagree with defendants' argument that Rysewyk was required to plead that she gave defendants an opportunity to repair or replace her lawnmower. First, plaintiffs have alleged that defendants warranted the lawnmowers to be "free from defects," [1] ¶ 22, which must be accepted as true on this Rule 12(b)(6) motion. That alleged warranty does not require the purchaser to give defendants a specific opportunity to repair/replace the lawnmower. Defendants permissibly attached what they purport to be the express limited warranty for Rysewyk's lawnmower, but defendants did so within the confines of Rule 12. Defendants did not seek to convert their motion into one for summary judgment. As a result, this case is on a different footing (for now) than *Daugherty v. Sony Electronics,* in which the undisputed evidence showed that the applicable warranty provided for repair/replacement as the sole remedy for a product determined to be defective. *See* 2006 WL 197090, *4–5 (Ct. App. Tenn. Jan. 26, 2006). In any event, defendants' proffered agreement can arguably be read as providing a warranty that the product was free from defects with no other conditions. *See* [31-2] at 3 ("[A]ll non-expendable parts of this riding equipment are warranted against any defects in material or workmanship."). Furthermore, the allegations as to Rysewyk suffice to support the inference that she complied with all of the proffered warranty's requirements. *See id.* ("For warranty coverage details to obtain [sic] free repair or replacement, call 1-888-331-4569 or visit the web page: www.craftsman.com/warranty").

10

requires notice under § 2-607(3)(a). For the reasons just given, this argument fails as to Rysewyk but succeeds as to Rood, whose Count II is dismissed.

Defendants next say Rysewyk has not alleged facts to establish that the goods at issue were not "merchantable" at the time of sale because Rysewyk does not "alleg[e] that her lawn tractor does not work or that the machine is not capable of performing its essential function of cutting grass." Plaintiffs respond that whether or not the lawnmower can cut grass does not alone answer the question of its merchantability. *See, e.g.*, *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) (vehicle that "smells, lurches, clanks, and emits smoke over an extended period of time" was not merchantable even though it drove).

Under Tennessee law, "[g]oods to be merchantable must be at least such as: (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." Tenn. Code Ann. § 47-2-314(2). Tennessee caselaw does not shed much light on whether the allegations in this case suffice to state non-merchantability. Defendants offer *Hunt v. Tire America, Inc.*, but, at best, that case stands for the proposition that second-tier products—marketed as such—are not non-merchantable merely because first-tier

11

products exist. *See* No. 03A01-9706-CV-00209, 1997 WL 769529, *3 (Ct. App. Tenn. Dec. 15, 1997).

As § 47-2-314(2) makes clear, goods are merchantable only if they "pass without objection in the trade." Rysewyk claims her lawnmower was sold to her with metal fuel-line clamps that were predisposed to getting too loose within a matter of weeks. [1] ¶ 9. For now, it is reasonable to infer that such a condition would not pass without objection in the trade of riding lawnmowers.

Count II is dismissed for Rood but remains for Rysewyk.

### C.    Unjust Enrichment (Count IV) – Rysewyk, Rood, Smith, and Van Vooren

Defendants believe Count IV should be dismissed as to all plaintiffs because, under the laws of each plaintiff's state, such claims may not proceed where the parties' relationship is governed by an express contract. *Daugherty*, 2006 WL 197090 at *6; *Codell Construction Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Plaintiffs say these unjust enrichment claims should remain because the cause of action may be pled in the alternative, and "it is premature to dispose of an unjust enrichment claim before the existence or nonexistence of a valid contract is clearly established by the Court." [45] at 21.

It is true enough that Rule 8 allows pleadings to be stated in the alternative, *see* Fed. R. Civ. P. 8(d)(2)–(3), but plaintiffs do not plead any alternative claims in which no express contract governs the parties' relationship. First, Count IV incorporates all of the complaint's preceding paragraphs, including those setting

forth the existence and terms of the express warranty. [1] ¶ 128. Second, plaintiffs do not allege a claim in which no contract governs; they say only that the claim is asserted "to the extent there is any determination that any contracts do not govern the subject matter of the disputes with Sears, or that Plaintiffs do not have standing to assert any contractual claims asserted against Sears." *Id*. ¶ 129. These collective allegations are not in the alternative and do not support a claim for unjust enrichment. Count IV is dismissed as to all plaintiffs.

### D. Negligence and Strict Liability (Counts III and V) –Van Vooren

Defendants say Van Vooren fails to state either tort claim because he has not "adequately alleged facts capable of establishing that the injury he allegedly sustained was caused by a defect in his Craftsman lawn tractor." [31] at 16–17. They argue that Van Vooren fails to allege "facts to support the conclusions that [the] fire was caused by the alleged defect in his lawn tractor." *Id*. at 18. Van Vooren "alleges that his lawn tractor was not in use at the time the fire started, making it implausible that the fuel line became dislodged 'during use' of the product, leaked fuel that then came into contact with operational electrical components, starting the fire." *Id*. Lastly, Van Vooren alleges neither that he saw the fire start, nor that his neighbors saw the actual tractor on fire (they only saw the garage). *Id*.

Defendants' persnickety criticisms are not persuasive. Taken as a whole, the complaint clearly supports the reasonable inference that a defect in Van Vooren's lawnmower caused the fire that burned down his garage and damaged his personal property. *See, e.g.*, [1] ¶¶ 3 ("The riding lawnmowers and lawn tractors at issue in

13

this case include all Craftsman riding lawnmowers and tractors sold by Sears that contain the Defect . . . that makes the mowers prone to catch fire"); 4 ("The Defect exists at the point of sale . . . and when the Defect manifests itself, the gasoline leak can ignite and cause fire while the Lawnmowers are in use or just after the Lawnmowers are stored after use"); 11 ("Van Vooren finished mowing his property, parked his Lawnmower just outside of his detached garage . . . the Lawnmower caught fire just after he walked away. . . . The burning Lawnmower burned the detached garage to the ground, melted the siding of his house, and burned the back of this truck."). The facts may belie his claim and Van Vooren will have to prove causation, but he has not pleaded himself out of court in alleging that his mower had a defect and caught fire after it was at rest.

Defendants next believe the tort claims fail because they are partly based on a theory of manufacturing defect, yet Van Vooren does not allege that his lawnmower was "manufactured in a way that deviates from design specifications." [31] at 26; *see also Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271, 283 (E.D.N.Y. 2009) ("To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in constructions."). As the Seventh Circuit has explained, however, "the victim of a genuinely defective product . . . may not be able to determine without discovery and further investigation whether the problem is a design problem or a manufacturing problem. It is common, for example, for

14

injured plaintiffs to plead both defective manufacture and defective design and to pursue discovery on both theories . . ." *Bausch v. Stryker Corp.*, 630 F.3d 546, 558–60 (7th Cir. 2010) "There are no special pleading requirements for product liability claims," and Van Vooren has pled facts sufficient to support a plausible claim. *Id.* ("[P]leading is meant to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court. . . . We give the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.") (quotation omitted).

The motion to dismiss Counts III and V is denied.

### E. Injunctive and Declaratory Relief (Count VI) – Rysewyk, Rood, Smith, and Van Vooren

Count VI requests a declaration that "the Lawnmowers have a common Defect in their design and/or manufacture" that "poses a serious safety risk to consumers and the public." [1] ¶¶ 146–47. Plaintiffs also seek an injunction compelling Sears "to take corrective action to prevent further injuries . . . ." *Id.* ¶ 150. Defendants argue that these claims for injunctive and declaratory relief should be dismissed because they are "merely derivative of the underlying substantive causes of action, which, as previously explained, should be dismissed." [31] at 29. Defendants make no other argument in favor of dismissing Count VI.

Because substantive claims are still in the case, this aspect of defendants' motion is denied as to Rysewyk, Smith, and Van Vooren. The motion is granted, however, as to Rood. Independent actions may be brought for injunctive or declaratory relief. But the former requires a plaintiff to plead a substantial

likelihood of success on the merits, and the latter requires an actual case or controversy. 28 U.S.C. § 2201. It necessarily follows from Rood's inability to plead Counts I–V that she cannot maintain an action for injunctive or declaratory relief.

### F. Sears Holdings and KCD IP

Defendants say all claims should be dismissed against Sears Holdings and KCD IP because the complaint makes clear that "it is **Sears** that offers products for sale through Sears-branded stores, and it is **Sears** from whom the plaintiffs allegedly bought their lawn tractors and to whom plaintiffs turned to make requests for repairs or other inquiries." [31] at 29. Defendants also say that Sears Holdings is alleged to be nothing more than "the parent company for Sears," while KCD IP is alleged to be only an entity created by Sears Holdings for securitization purposes that owns Sears's house brands, including Craftsman, Kenmore, and DieHard. *Id.* at 30. Plaintiffs respond that these two defendants should remain in the case because of the doctrine of "direct participant liability," under which a parent corporation may be held liable for the wrongdoing of its subsidiary where the parent directly participated in the subsidiary's unlawful actions. *See Esmark, Inc. v. NLRB*, 887 F.2d 739, 756 (7th Cir. 1989). That doctrine does not fit this case, however, because it requires the parent to have "disregard[ed] the separate legal personality of its subsidiary . . . and exercise[d] direct control over a specific transaction . . . ." *Id.* at 757. The present complaint contains no allegations to that effect.

Plaintiffs defined "Sears" in their complaint to include all three defendants. The references to "Sears" throughout the complaint are allegations directed to all three defendants. But such group pleading cannot save a complaint when more specific allegations do shed light on the roles of the different entities. Defendants are correct that KCD IP is not alleged to have done anything other than own the intellectual property for securitization purposes, *see* [1] ¶ 17, and that entity is appropriately dismissed from the case. Sear Holdings, by contrast, is alleged to have done more than merely serve as Sears, Roebuck and Company's parent. Plaintiffs allege that Sears Holdings "markets, sells, and services Craftsman tools and equipment, including the Lawnmowers, through its retail establishments throughout the United States." *Id*. ¶ 16. Reading the complaint as a whole, plaintiffs' surviving claims are plausibly alleged against both Sears entities.

### G. Motion to Strike Class Allegations

Defendants move to strike the class allegations from the complaint under Rules 23(c)(1)(A) and 23(d)(1)(D). It is "practicable" to resolve the class certification question at the pleadings stage only when it is apparent from the complaint that class certification is inappropriate. *Cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1983); *see also Hill v. Wells Fargo Bank*, 946 F.Supp.2d 817, 829 (N.D. Ill. 2013).

Defendants offer two reasons why this standard is met. First, defendants say class treatment is clearly inappropriate because the nationwide class's claims would be governed by the laws of the 50 different states. Defendants cite to several

17

decisions in which courts struck class allegations on that basis. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011); *In re Yasmin & Yaz (Drospirenone) Mtkg., Sales Practices and Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 275–76 (S.D. Ill. 2011). Defendants do not explain in any detail, however, how the relevant laws of the different states differ in material ways—and to what degrees—so as to make it apparent at this stage that individual questions will predominate over common ones. Although defendants purport to demonstrate these differences, all they actually do is repeat in generic ways that the laws of different states are different. *See* [34] at 6–7.

Unlike with a motion for class certification, defendants, as the movants, bear the burden of persuasion on their motion to strike. While defendants conceivably could have demonstrated that specific variations of laws between specific states preclude class treatment, they did not make such a showing, or otherwise carry their burden of persuasion. Although the Seventh Circuit has stated in dicta that "[n]o class action is proper unless all litigants are governed by the same legal rules," *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002), I will not assume a class action is per se unworkable simply because it is alleged to be nationwide and it might involve the laws of many states. No controlling authority goes so far. Instead, specific impediments must be shown (or, in the case of a class certification motion, overcome). Plaintiffs might not carry their burdens at class certification, but nothing in the complaint or defendants' explanation of the law persuades me that it is practicable to resolve the certification question at this stage.

Second, defendants say the class allegations should be stricken because plaintiffs' complaint sets forth a "fail-safe" class, i.e., a class whose membership depends on a finding of liability. Such class definitions are troublesome because "a class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (quotation omitted). Alleging a fail-safe class in a complaint, however, is not grounds for striking the allegations. *See Messner v. Northshore University Health System*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Further, although the specific class definition contained in the complaint does present fail-safe issues, I view it primarily as a placeholder that, together with the complaint's other allegations, gives fair notice of the type of permissible class plaintiffs will seek to certify.

Defendants' motion to strike plaintiffs' class allegations is denied.

## IV. Conclusion

Defendants' motion to dismiss [30] is granted in part, and denied in part. All counts are dismissed against KCD IP, LLC. As for the other defendants, only the following claims remain: Count I (Rysewyk), Count II (Rysewyk), Count III (Van Vooren), Count V (Van Vooren), and Count VI (Rysewyk, Van Vooren, and Smith). All dismissals are without prejudice. Defendants' motion to strike plaintiffs' class allegations [33] is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 12/18/15